# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# LEXINGTON

**CRIMINAL ACTION NO. 5:23-CR-49-DCR**

**UNITED STATES OF AMERICA**                                               **PLAINTIFF**

V.          **UNITED STATES'S SENTENCING MEMORANDUM**

**AUSTIN MICHAEL GENAY**                                               **DEFENDANT**

\* \* \* \* \*

This memorandum includes a preview of the United States' sentencing recommendation and its position on the unresolved objection this case in compliance with the Court's Order of September 13, 2023. [*See* DE 38: Sentencing Order].

Defendant Austin Michael Genay (Genay) met and developed an online sexual relationship with T, the victim who the United States will refer to as T, in late 2015 and into 2016. T and Genay contacted each other and initially consensually engaged in online exchanges of a sexual nature. Unbeknownst to T at the time, Genay had memorialized some of their earliest online encounters by capturing screenshots and photos of the two chatting online, not only of their initial conversations through messaging, but also explicit images of T's genitalia. Throughout their communications Genay told of many woes, mostly via electronic messaging on Facebook and iPhones, to T. Genay told T he needed money for car repairs and issues, for rent, for bail, for school, for work-related issues, because he was hungry, and he even told T close family members, including his mother, had died (which

was not true) to convince T to pay him various amounts of money. T obliged him. When T became frustrated with the frequency and amount of money T was paying Genay, T began to question the veracity of Genay's issues and demands, and T began refusing to pay Genay. Between August of 2015 and July of 2019, T paid Genay about $468,418.00. *See* Ex. 1.

    Before investigators became involved, T was hiding all of this from everyone else in his life: his wife, his children, his community, and his church. T was entitled to keep private business private, but T began stealing from another to keep this secret hidden. T's actions turned criminal and so did Genay's. Despite knowing T no longer wanted to be involved with Genay and in spite of T's refusals to continue to pay him for myriad items, Genay's communications became unwanted, harassing, and even threatening. Genay knew about T's family because they had shifted their conversations from the online chat application to Facebook very early on where T had open and notorious photos of his wife and children and they in turn posted public pictures and posts about each other. When T began refusing contact and monetary demands from Genay, Genay used the surreptitious images he had saved as a weapon against T. From then on, when T refused to pay Genay, Genay would resend damning images to T to coerce T to go along with his demands. T would fold and pay him out of fear that Genay would expose T's secret and ruin his otherwise good reputation with his family, namely his wife of decades. This is a form of what has been dubbed sextortion.

The Defendant has accepted felonious liability but still has not accepted full responsibility for the financial harm he caused in the process. This Defendant's conduct warrants a term of imprisonment of 18 months which is at the lowest end of the estimated guideline range. Losses and restitution should be adjudged at $250,000. This would account for the victim's admissions that sometimes he paid Genay willingly but at least after a year, accounts for the fact that Genay frequently and incessantly held the club of exposure over T's head to continue to collect money in tandem with Genay's crimes.

## I.      THE APPLICABLE ADVISORY GUIDELINES RANGE

The advisory Sentencing Guidelines range serves as the "starting point and initial benchmark" for the Court's sentencing analysis. *United States v. Bolds*, 511 F.3d 568, 579-80 (6th Cir. 2007) (citation omitted). Accordingly, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. King*, 553 Fed. Appx. 518, 520 (6th Cir. 2014) (citing *Gall v. United States*, 552 U.S. 38, 49 (2007)).

The parties agree that the applicable guideline to start the calculation in this case is USSG § 2A6.2, which covers certain stalking crimes and carries a base offense level of 18. The United States concurs with the PSR that two point must be added to account for Specific Offense Characteristic apply, pursuant to § 2A6.2(b)(1)(E) which results in an adjusted offense level of 20. With the acceptance of responsibility plus a Chapter Four adjustment as depicted in the PSR at para. 32 and 33, Genay's total offense level is 15.

## II.     UNRESOLVED OBJECTION

The United States has an unresolved objection to address: loss and restitution, which for the purposes of this case is the same figure. The United States recognizes the PSR accounts for losses that span from the beginning of 2017 until the time the FBI intervened in this case which aligns with T's general recollection; however, the United States, in the course of plea negotiations in tandem with Defense Counsel's account of their client's position and having informed T, via counsel, of its intent and reasons based on the weight of the evidence and Defense's proffer, through counsel, that some payments were made voluntarily despite the intermixing of threats, agreed to a loss cap of $250,000. The United States requested a forensic accountant review financial records and create a spreadsheet of every payment sent from T to Genay from 2017 forward. With this spreadsheet, although no party denies that these payments were made by T and received by Genay, the United States hoped that it could work with the Defendant to determine where to specifically draw the line with respect to losses. The parties could come no closer in agreement on this issue, and the United States will continue to honor its agreement even though the victim has now specifically declared losses amounted to $350,000, that statement has been filed separately today under seal. The plea agreement stalemate on a range of loss for this case is accurately referenced in para. 14 of the PSR. It is the United States' position that loss is at least $250,000 based on the financial records reviewed coupled with the victim's assertion that he paid Genay because of the threat of exposure of the sexual encounters for which he harbored embarrassment. Genay asserted, through Counsel, that T willingly paid him at times in 2016 and 2017. With these two competing and overlapping claims for the year

2017, the United States yielded to a $250,000 cap on losses caused and restitution now due and owing.

The Defendant's conduct is otherwise sufficiently accounted for with the application of the guideline for the key crime that aptly captures his overarching behavior in the commission of wire fraud and stalking.

### III. THE UNITED STATES'S SENTENCING RECOMMENDATION UNDER 18 U.S.C. § 3553(A)

As a result of *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are effectively advisory. While a sentencing court must still consider the guidelines, it must also consider other factors as well and, in particular, the factors specifically identified in 18 U.S.C. § 3553(a). *Id*.

Under § 3553(a), a court "shall impose a sentence sufficient, but not greater than necessary" to comply with the following purposes of sentencing: To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

In determining the particular sentence to be imposed, a court also must consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the sentencing purposes listed above; (3) the kinds of sentences available; (4) the types of sentences and sentencing

range established by the sentencing guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. The relevant factors identified by the United States are discussed below.

      A.      *The Nature and Circumstances of the Offense*

In support of a guidelines sentence as calculated by the United States, the Court should take into account the constant stress and nonstop behavior in which the Defendant engaged to get money from a former paying "customer." T was a paycheck…not a love interest. The two had never met in person. Their relationship continued only because Genay would not let his paycheck go and knew his victim would continue to pay him if he harassed and threatened him enough each week, each day, often bombarding T with messages in a single day. The fact that Genay was using T to fund his drug addiction for four years, or however long he was fighting that battle, is not a mitigating factor. It simply explains part of the "why" and informs the Court the extent to which he was willing to go to get money from T. The United States will call FBI, SA Dave Lowery to testify to the key facts in support of the United States position. His testimony on direct will not exceed 45 minutes. SA Lowery can confirm the amounts that were transferred and speak to the United States summary of payments T made to Genay under threat of exposure as early as January 2017. United States Exhibit 2 captures all payments limited to this latter period. Ex. 2. The undersigned, having reviewed the communications

discovered in this case from Genay to T would qualify them, frankly, as rabid.

In addition to the facts recounted above, T admitted to investigators to feeling sorry for Genay based upon all the stories he had told. T thought Genay was a young twenty-something man who was alone in the world and needed financial help from T who was approaching 60 years of age and fairly well established. T admitted, sometimes T paid Genay's demands in accordance with these developed sympathies based on Genay's representations. Investigators; however, discovered claims Genay made were based on false pretenses which prompted the allegations of wire fraud. T has never pinpointed exactly when payments to Genay became strictly out of fear for the destruction of his family, rather than out of personal caring feelings or just selfish self-preservation. What T has told investigators clearly, is that T's refusals to pay and Genay's resulting threats began within six months to a year after they began their online meetings.

Based on Genay and T's statement that they met in late 2015 and the financial records which corroborate transactions as early as August 2015 but which increased in December of 2015, the United States counted forward from the later date and looked a year forward from December 2015 to reasonably account for a timeframe within which payments may have been made begrudgingly by T but still voluntarily. Thereafter, Genay's demands turned into a criminal scheme to defraud, harass, and in T's words, "blackmail" his victim. This timeline accounts for the victim's statement and inurs to Genay's benefit. Based on this inference from the victim's statements in concert with the other evidence, the preponderance of the evidence supports a finding that the threats and

cyberstalking began by January of 2017.

Genay's relevant conduct includes the manner, the means, the duration, the frequency of his criminal behavior, and the amount, as the Court will determine, of pecuniary harm Genay has caused T in the course of his crimes. *See* USSG § 1B1.3. If law enforcement hadn't intervened, Genay might still be collecting from T.

    B.  *Imposing a Just Punishment*

The United States recommends a low-end guideline sentence of 18 months given the totality of this Defendant's particular circumstances. The Guidelines sentencing range of imprisonment has been properly and adequately applied and there is no reason to depart from it.  A sentence at the low end is just but not more punishment than is sufficient to answer for Genay's crimes.

    C.  *To Deter Criminal Conduct and Protect the Public*

Genay committed these crimes under the cloak of the internet and his iPhone.  He may have shirked away quickly once his scheme was discovered and directly confronted by law enforcement officers, but he was never deterred by his own victim's pleas to stop. He chose to inflict the emotional and financial distress on T, in particular, due to T's particular vulnerabilities and characteristics.  This was a crime with a specific victim that he chose to victimize and take from over and over again.  Maybe he no longer presents a threat now that eyes are on him, but the United States submits both specific and general deterrence remain pressing factors in this case.  To generally deter others from embarking on this path; however, is the weightier factor in a case from the United States'

perspective. The United States recommends the Court order a sentence of imprisonment that will deter others from engaging in similar offenses and curb harm to future victims.

### D. *History and Characteristics of the Defendant*

The PSR sets forth the Defendants' history and characteristics in detail and the United States has no reason to dispute them. Nothing in his record, provides mitigation or justification for his actions. Genay is young, this, fortunately gives him time to correct course and pay restitution to help make his victim whole. Genay has complied with the terms of his release pending sentencing. The United States finds it difficult to speculate about Genay's risk for recidivism and submits that the history and characteristics of this particular Defendant weigh in favor of a sentence within the Guideline range as calculated by the United States or as determined by the Court at Sentencing.

### E. *No Fine Requested*

The Court also considers "the kinds of sentences available" under 18 U.S.C. § 3553(a)(3). In addition to any term of imprisonment the Court might impose, the Court may consider imposing a fine, as fines can have a meaningful deterrent effect in cases like the present. *See United States v. Turner*, 998 F.2d 534, 536 (7th Cir. 1993) ("The system of penalties under the Guidelines is constructed on the belief that higher fines, and longer sentences of imprisonment, are more effective deterrents."); *see also* U.S.S.G. §§ 5E1.2(d)(1). The Court could impose a fine on this Defendant but the United States is not seeking a fine. Instead, the United States recommends the Court Order restitution be paid to the victim in the amount of $250,000.

F.    *Restitution*

Pursuant to 18 U.S.C. § 3663A, restitution shall be ordered in this case. The amount is yet to be determined. The parties agree restitution is due in this case and the victim is T but that and funds payed will flow through to T's victim in a related case. [DE 36: Plea Agreement]. The parties agreed that the loss amount was between $60,00 up to $250,000. At the time the United States entered into this agreement statements from the victim and without a victim impact statement and without the victim's declaration of losses. In honor of its agreement and because the United States submits it is still a reasonable estimate of loss under the circumstances given that T is known to have paid over $468,000 to Genay since their first encounter based on forensic analysis of bank records during the relevant period. *See* Ex. 1. For all of these reasons, the United States respectfully requests an order of restitution identifying the T as a victim of the Defendant's crimes and in the amount of $250,000.

## IV. CONCLUSION

Based upon the U.S.S.G. calculation in the PSR, with which the United States concurs, and after consideration of the applicable § 3553(a) factors, the United States recommends a sentence of 18 months imprisonment for the Defendant and three years of supervised release thereafter. Additionally, the United States asserts restitution is appropriate in this case and respectfully moves the Court to order the Defendant to pay $250,000.00 in restitution to account for the losses T suffered as a result of the Defendant's wire fraud and cyberstalking offenses.

                    Respectfully submitted,

                    CARLTON S. SHIER, IV
                    UNITED STATES ATTORNEY

By:    *s/ Tashena A. Fannin*
            Tashena A. Fannin
            Assistant United States Attorney
            260 W. Vine Street, Suite 300
            Lexington, Kentucky 40507-1612
            (859) 685-4829
            FAX (859) 233-2747
            Tashena.fannin@usdoj.gov

CERTIFICATE OF SERVICE

On December 8, 2023, I electronically filed this motion through the ECF system, and I sent this motion by electronic mail to:

Edward M. Thompson and Doreen Thompson
*Attorneys for Austin Michael Genay*

Kendahl Granger Foright
*United States Probation Officer*

*s/ Tashena A. Fannin*
Assistant United States Attorney
